### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN D. BLECHER, et al., *Plaintiffs,* v. PROGRESSIVE SELECT INSURANCE COMPANY, et al., *Defendants.* | CIVIL ACTION NO. 25-4448 |

**Pappert, J.**                                                                                           **December 19, 2025**

### MEMORANDUM

Alan Blecher and his son Jonathan, both of whom are lawyers, sued Progressive Select Insurance Company, Progressive Casualty Insurance Company and the Progressive Corporation under Pennsylvania law alleging breach of contract, bad faith and defamation. The defendants now move to dismiss the Blechers' Amended Complaint for lack of personal jurisdiction and failure to state a claim. The Court grants their motion dismissing the Blechers' Amended Complaint with prejudice.

I

In or around October of 2024, Jonathan and Alan Blecher bought a 2022 Dodge Challenger Hellcat from a Delaware dealer and arranged for the car's delivery in Philadelphia. *See* (Am. Compl. ¶¶ 1, 10, 13, 15, 18, Dkt. No. 5); *see also* (Auto Ins. Coverage Pol'y at 2, Dkt. No. 10-2) (stating the Blechers had owned the car for less than a month as of October 26, 2024). Alan planned to drive the car to Green Cove Springs, Florida—where he intended to buy a home. (Am. Compl. ¶¶ 14–15, 18.) Until Alan

1

could fulfill that intention, the Blechers "stored" their car in a "facility" in Philadelphia. (*Id.* ¶ 18.)

On October 26, Alan bought a Florida automobile insurance policy from Progressive Select Insurance Company, which covered, among other things, theft. (*Id.* ¶¶ 10, 11); *see also* (Auto Ins. Coverage Pol'y at 2, 34–35.)  In his policy application, Alan listed his address as 411 Walnut Street 19810, Green Cove Springs, Florida, 32043. (Debra Henry Decl. ¶ 4, Dkt. No. 10-1); (Auto Ins. Coverage Pol'y at 2.)  He affirmed that his 2022 Dodge Challenger Hellcat "**is** garaged at the same location in the zip code provided in [the] application" (32043) "more than 50% of the time." (Debra Henry Decl. ¶ 5) (emphasis added); (Am. Compl. ¶¶ 13, 23.)  Progressive Select issued the policy relying on the "accuracy and truthfulness of information provided" in the application. (Auto Ins. Coverage Pol'y at 45); (Am. Compl. ¶ 12.)  And it retained the authority to "void" the policy—meaning it would not be "liable for any claims . . . that would otherwise be covered"—if Alan had "at the time of application" made material "incorrect or untrue statements or representations" or engaged in "fraudulent conduct." (Auto Ins. Coverage Pol'y at 45); (Am. Compl. ¶ 12.)

Neither Alan nor Jonathan took the car to Florida.  Alan had a hernia and Jonathan had a demanding job in New York, so neither could "complete the drive." (Am. Compl. ¶ 16.)  Given these "circumstances beyond [the Blechers'] control," their car remained in Philadelphia—until April of 2025, when it was stolen. (*Id.* ¶¶ 16, 18, 21.)

The Blechers submitted a claim to Progressive Select, which denied coverage asserting "[f]raud and [m]isrepresentation at the time of [the] policy['s] inception." (*Id.*

¶ 23.) According to Progressive Select, Alan had made a material incorrect or untrue representation in his insurance application when he affirmed his car "is garaged" in the Green Cove Springs zip code (32043) "more than 50% of the time." (Debra Henry Decl. ¶ 5); (Am. Compl. ¶¶ 13, 23.) Given the Blechers had *never* garaged their car in Florida, and instead stored it in Philadelphia, the car was not "garaged" in Florida "more than 50% of the time." *See* (Am. Compl. ¶ 23) (alleging Progressive Select asserted the car was "never garaged in Florida"); (Defs.' Mot. to Dismiss ¶ 10, Dkt. No. 10) ("Progressive Select denied the claim based on Plaintiffs' misrepresentation that the vehicle would be garaged in Florida for more than 50% of the time.").

II

Progressive Select moves to dismiss the Blechers' breach-of-contract and bad-faith claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[1]

A

Rule 12(b)(2) permits a court to dismiss a claim for "lack of personal jurisdiction." To withstand such a motion, the "plaintiff bears the burden of establishing the court's jurisdiction over the moving defendant[]." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Such a motion is "inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in

---

[1] Though Progressive Select moves to dismiss the Blechers' defamation claim for both lack of personal jurisdiction and failure to state a claim, *see* (Defs.' Br. in Supp. of Mot. to Dismiss at 11, 23, Dkt. No. 10-3), its personal jurisdiction arguments focus *only* on the Blechers' contract and bad-faith claims. Because courts must assess specific personal jurisdiction on a "claim-by-claim basis," *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.3 (3d Cir. 2007), the Court will consider only whether the Blechers have alleged sufficient facts to state a plausible defamation claim against Progressive Select.

personam jurisdiction actually lies." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). The Court "must accept all of the plaintiff's allegations as true and construe the disputed facts" in his favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (internal quotation marks and citation omitted). Still, once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff may not rely on "bare pleadings"; rather, he "must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club*, 735 F.2d at 66 n.9.

B

A federal court may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," so long as the exercise of jurisdiction comports with the Constitution. Fed. R. Civ. P. 4(k)(1)(A); *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Because Pennsylvania's long-arm statute extends as far as federal due process permits, *see* 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b), the only question is whether exercising personal jurisdiction over Progressive Select comports with the Constitution.

There are two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984). General jurisdiction permits a defendant to be sued in a particular forum for any claim, regardless of whether the claim has any connection to the forum State. *Id.* at 414 n.9. Relevant here, a court may assert "general" jurisdiction over a defendant in its home State—where the defendant is incorporated or headquartered, or where the defendant

has such systematic contacts to the forum that it is essentially at home. *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 413 (2017). Specific jurisdiction, by contrast, is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). A court may exercise "specific" jurisdiction over a defendant if the plaintiff's claims "arise[] out of or relate[] to" the defendant's contacts with the forum State. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citation omitted).

General jurisdiction does not apply. Progressive Select is incorporated in Ohio and maintains its principal place of business there. (Debra Henry Decl. ¶ 8.) And nothing shows Progressive Select has a sufficient relationship with Pennsylvania to render it "essentially at home" in the Commonwealth. *BNSF Ry. Co.*, 581 U.S. at 413 (internal quotation marks and citation omitted).

Specific jurisdiction has three requirements. First, the defendant's contacts with the forum State must show that it "purposely avail[ed] itself of the privilege of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Second, the plaintiff's alleged injury must arise out of, or relate to, the defendant's contacts with the forum State. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Blechers fail to satisfy the first requirement—that Progressive Select purposefully availed itself of the privilege of conducting business in Pennsylvania. To

5

satisfy this test, the Court must determine whether there are "'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A "necessary" component of this standard is the "deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317.

Nothing shows Progressive Select deliberately targeted Pennsylvania. The Blechers fail to allege facts to show Progressive Select solicited Alan's business in Pennsylvania, *see id.* at 318, or targeted the Pennsylvania market generally through advertising, *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003); *Ford Motor Co.*, 141 S. Ct. at 1028. Progressive Select is neither registered nor licensed to issue insurance policies in Pennsylvania. (Debra Henry Decl. ¶ 10); *see also Ford Motor Co.*, 141 S. Ct. at 1028. The Blechers, moreover, allege no facts to show Progressive Select negotiated the insurance policy in Pennsylvania, contemplated a lawsuit in Pennsylvania, or that the policy had any connection to Pennsylvania. *Burger King Corp.*, 471 U.S. at 479. Progressive Select issued Alan a Florida insurance policy out of its Florida office for a car that Alan said would be primarily garaged in Florida. (Auto Ins. Coverage Pol'y at 2); (Fla. Pol'y Endorsement at 56–63, Dkt. No. 10-2.)

The Belchers' only counterargument is that an employee of Progressive Casualty, who works in Pennsylvania, contacted them regarding the claim they submitted to Progressive Select. (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 16, Dkt. No. 14.) The Blechers do not allege the nature of the relationship between Progressive Select and Progressive Casualty, and two related principles show why their argument fails to establish personal jurisdiction.

To begin, "the critical finding that the defendant purposefully availed itself of the privilege of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state to target its citizens." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103–04 (3d Cir. 2009). Thus, a "defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Due process "requires that a defendant be haled into court in a forum State based on his *own* affiliation with the State." *Id.* (emphasis added). Deliberate contact with a third-party in the forum State, in other words, is not the same thing as deliberate contact with the State itself. *Id.* Again, nothing shows Progressive Select purposefully availed itself of the privilege of conducting business within Pennsylvania by deliberately reaching into the Commonwealth to target its citizens.

Equally relevant is the principle that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of [deliberate] contact with the forum State." *Hanson*, 357 U.S. at 253. Thus, even if a Pennsylvania-based employee of Progressive Casualty investigated the Blechers' claim on behalf of Progressive Select, it was the Blechers' decision to store their car in Philadelphia that "forced" Progressive Select to have the Blechers' claim investigated in Pennsylvania. *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1249 (9th Cir. 1984). The "mere fact" that Progressive Select allegedly "communicated" with Progressive Casualty in Pennsylvania does not show that Progressive Select "purposefully availed itself of the privilege of conducting business in" Pennsylvania. *Id.*; *see also Rambo v. Am. S. Ins.*, 839 F.2d 1415, 1420 (10th Cir. 1988) (explaining "minimum contacts are not necessarily

established simply because a plaintiff's move into a state requires the defendant to send communications into that forum"); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.*, 907 F.2d 911, 913 (9th Cir. 1990) (rejecting an argument that an insurance company's investigation of a claim in a forum showed the company purposefully availed itself of the privilege of conducting business in the forum).

### III

Progressive Casualty and Progressive move to dismiss the contract, bad faith and defamation claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). And as noted, Progressive Select also moves to dismiss the defamation claim for failure to state a claim.

### A

The Court assesses the sufficiency of the pleading of a claim before discovery under Federal Civil Rules 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second step is to examine the plaintiff's complaint and determine whether

the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2.

## B

### 1

To state a claim for breach of contract, the Blechers must show (1) a contract, (2) its breach and (3) resulting damages. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).

The Blechers fail to allege sufficient facts to show they had a contract with Progressive Casualty or Progressive. In Pennsylvania, a contract exists when "there is mutual assent to the terms of a contract by the parties with the capacity to contract." *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999). Here, Alan entered into a contract with Progressive Select, not Progressive Casualty or

Progressive. *See* (Auto Ins. Coverage Pol'y at 9) (explaining Progressive Select, the "underwriting company providing the insurance," and Alan mutually assented to the terms of the policy).

The Blechers' only response is that Progressive Casualty "ultimately breach[ed]" the policy because its employee investigated their claim. (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 41.) But Alan had no contract with Progressive Casualty, and a non-party to a contract cannot breach that contract. *See Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991) ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract."); *Seidner v. Finkelman*, 2012 No. 02883, 2017 WL 11657210, at *19 (Ct. Com. Pl. Pa. June 12, 2017) (rejecting a plaintiff's argument that "a breach of contract claim can exist against a non-party to the contract"). And the Blechers do not adequately allege how Progressive could be liable for Progressive Select's alleged breach of the policy, saying only it created "corporate policies." (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 41); *see also Brown v. End Zone, Inc.*, 259 A.3d 473, 489 (Pa. Super. Ct. 2021) (explaining the "general principle of corporate law" that a "parent corporation" is "not liable for the acts of its subsidiaries") (internal quotation marks and citation omitted).

2

To state a claim for bad faith, the Blechers must allege the "insurer . . . acted in bad faith" under an "insurance policy." 42 Pa. Stat. and Cons. Stat. Ann. § 8371. The Blechers fail to allege sufficient facts to show that Progressive Casualty and Progressive were their "insurers." An insurer is one "who *underwrites* insurance policies and issues them to insureds." *Insurer*, Black's Law Dictionary (12 ed. 2024)

(emphasis added). Again, Progressive Select was "the underwriting company providing the insurance" to Alan, making that company the "insurer." (Auto Ins. Coverage Pol'y at 2, 9.)

3

To state a claim for defamation, the Blechers must show, among other things, a defamatory statement. *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8343(a). But under Pennsylvania law, some statements are "absolutely privileged and cannot form the basis for a defamation action." *Marino v. Fava*, 915 A.2d 121, 124 (Pa. Super. Ct. 2006). Relevant here, "private parties involved in providing information to the proper authorities in connection with the suspected commission of a crime" enjoy absolute privilege from defamation. *Pawloski v. Smorto*, 588 A.2d 36, 42 (Pa. Super. Ct. 1991).

This law-enforcement privilege shields the Progressive defendants from liability. The Blechers allege the Progressive defendants referred Alan to the Pennsylvania Attorney General for fraud. (Am. Compl. ¶¶ 38–46.) This referral is absolutely privileged. First, the Progressive defendants made their referral "solely to law enforcement officials"—the Pennsylvania Attorney General. *Pawlowski*, 588 A.2d at 43. Second, the "content of the statement[] as alleged by [the Blechers] in the [amended] complaint was limited to [an] accusation of [fraud]." *Id.* And third, the statement was "made at least in part for the purpose of convincing the proper authorities to institute criminal proceedings." *Id.* In short, the Progressive defendants' referral of Alan to the Pennsylvania Attorney General for suspected fraud "fit[s] squarely within the absolute privilege" doctrine. *Id.*; *see also Forbes v. King Shooters Supply*, 230 A.3d 1181, 1189 (Pa. Super. Ct. 2020) (holding statements to police were absolutely privileged);

11

*Greenberg v. McGraw*, 161 A.3d 976, 988–89 (Pa. Super. Ct. 2017) (holding statements made to a state medical agency were absolutely privileged even if the statements were false).

The Blechers suggest the Progressive defendants lost any privilege they may have had because they acted with malice. (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 37.) Specifically, they allege the Progressive defendants referred Alan to the Pennsylvania Attorney General to "intimidate" him. (Am. Compl. ¶ 46.) But the law-enforcement privilege described above is "absolute and cannot be destroyed." *Marino*, 915 A.2d at 124 (citation omitted). It does "not depend upon the motive of the defendant in making the allegedly defamatory statement." *Id.* (citation omitted). Thus, even if a statement "ultimately prove[s] to be false or maliciously motivated," public policy concerns "outweigh the right of the defamation plaintiff to seek redress for harm caused by the statements." *Pawloski*, 588 A.2d at 42.

## IV

A court should grant a plaintiff leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court need not do so when amendment would be "futile." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if it would not "cure the deficiency" in the complaint or would not "withstand" another motion to dismiss. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). First, the Blechers cannot allege more jurisdictional facts which could show the Court has specific personal jurisdiction over Progressive Select. Second, it would be futile for the Blechers to amend their claims for breach of contract and bad faith against Progressive Casualty and Progressive because they did not have

an insurance contract with those companies. And finally, it would be futile for the Blechers to amend their defamation claim because the defendants have absolute privilege under Pennsylvania law.

When a court dismisses with prejudice claims for lack of personal jurisdiction, it must at least consider transferring the case. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). But a court need not transfer the case "[i]f a plaintiff may, on [his] own, refile [his] case in a proper forum." *Id.* at 133. Here, the defendants acknowledge that the Blechers may refile their claims for breach of contract and bad faith against Progressive Select in Florida. And although the Blechers do not favor a transfer to Florida, they do not dispute that they *could* refile in that State. *See* (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 34–35). Given this, the Court will not transfer the case. *Danziger & De Llano, LLP*, 948 F.3d at 133; *see also Norton v. Mylan N.V.*, No. 22-01206, 2025 WL 1752340, at *5 (D.N.J. June 25, 2025) (dismissing a complaint for lack of personal jurisdiction and refusing to transfer the case because the plaintiff could refile his case in a proper forum).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.